EMMA BAKER, Respondent, v. CITY OF INDEPEND-
ENCE, Appellant.

### Kansas City Court of Appeals, March 3, 1902.

1. **Trial Practice:** MISCONDUCT OF COUNSEL: OPENING STATEMENT. The remarks of plaintiff's counsel, in opening the case, to the jury, relating to the amount of a former verdict, are considered in connection with the action of the court and the incident is held harmless.

2. ———: ———: ———. The courts look to the circumstances and character of such remarks and if they find the jury was influenced thereby in their verdict it should be set aside, otherwise it is harmless.

3. **Damages:** PERSONAL INJURY: MEASURE OF: INSTRUCTION: JURY. An instruction relating to the measure of damages for a personal injury is criticised for its loose verbiage, but is held not misleading since jurors as a rule look more to the general meaning of an instruction than to its analysis in detail.

4. ———: ———: EXCESSIVE: EVIDENCE. Evidence relating to an injured hand and arm is considered and a verdict on a second trial for nineteen hundred and thirty-three dollars is not considered excessive since the verdict on the first trial was for eighteen hundred dollars.

5. ———: ———: ———: SECOND TRIAL: APPELLATE PRACTICE. On a first trial a verdict for eighteen hundred dollars was returned which the trial court set aside on the ground that it was excessive. Plaintiff appealed and the order setting aside the verdict was affirmed in deference to the prerogative of the trial court. On a retrial the verdict was for nineteen hundred and thirty-three dollars which the trial court refused to set aside. *Held,* the appellate court will defer to the two verdicts and the action of the trial court.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,*
Judge.

AFFIRMED.

*Paxton & Rose* for appellant.

(1)   "The rule is well settled that where counsel have attempted to make a case in their argument, which the law would not allow them to make in their tenders of evidence, such conduct, if objected to and allowed to go unrebuked, constitutes a valid ground for the reversal of the judgment." Churchman v. Kansas City, 49 Mo. App. 366; Gibson v. Zeibig, 24 Mo. App. 65; Evans v. Town of Trenton, 112 Mo. 390.   (2)   Neither is the matter helped by counsel withdrawing the remark.   He did not withdraw the impression he had made and could not do so; and withdrawing the statement was a vain and idle ceremony, performed after the mischief was done and beyond recall.   Wolffe v. Minnis, 74 Ala. 386-389, quoted with approval in Gibson v. Zeibig, 24 Mo. App. 65.   (3)   Attorneys are held responsible for what they say in their opening statements.   Pratt v. Conway, 148 Mo. 291.   (4)   Both this court and the Supreme Court have said that where the verdict was not clearly supported by the evidence the case should be reversed on account of improper remarks of counsel.   Mason v. Mining Co., 82 Mo. App. 367; State v. Phillips, 160 Mo. 503; Dimmitt v. Railroad, 40 Mo. App. 654; Goldman v. Wolff, 6 Mo. App. 490; Rolfe v. Rumford, 66 Me. 564.   (5)   Instruction No. 5 given for plaintiff, was as follows:   "The court instructs the jury that if you find for the plaintiff in assessing her damages you will take into consideration the physical injury inflicted, the bodily pain and mental anguish endured, and any that may result in the future from said injury, if any, which you believe the evidence proves she has sustained, not to exceed in all the sum of $2,500."   This word *may* leaves the amount of future damage open to speculation; and the jury are told to find for future damage any injury that may result, thus directing them to take the highest figure the evidence would justify. Bigelow v. Railroad, 48 Mo. App. 367; Beasley v. Lineham

Transfer Co., 148 Mo. 413. (6) It may be said, however, that it was for defendant to offer an instruction correcting this erroneous instruction. This rule applies when the instruction is merely too general, but not when it is erroneous. Repugnant directions afford no guide to the jury, nor can it be presumed that they followed one rather than the other. Linn v. Bridge Co., 78 Mo. App. 111-118; Goetz v. Railroad, 50 Mo. 472; Carder v. Primm, 60 Mo. App. 423; Worthington v. Railroad, 72 Mo. App. 162.

*Callahan & Dryden* for respondent.

(1) No specific objections were made to the alleged language at the time. A general objection is insufficient, and does not bring the alleged improper remarks before this court for its consideration. James v. Kansas City, 85 Mo. App. 26. (2) The trial judge promptly instructed the jury to disregard the statement objected to. This was sufficient under the many and uniform rulings of the courts of this State. Gibson v. Zeibig, 24 Mo. App. 71-72; Hiles v. Rule, 49 Mo. App. 628; 1 Thompson on Trials, sec. 964; Murphy v. Gillum, 79 Mo. App. 565; Ruth v. Railroad, 70 Mo. App. 201; Goldman v. Wolff, 6 Mo. App. 497-88. Besides, respondent's counsel withdrew the statement. Evans v. Town of Trenton, 112 Mo. 402. (3) The trial court committed no error in giving instruction No. 5 for plaintiff. It correctly stated the measure of damages. If the instruction was technically inaccurate, it is not probable that the jury could have been influenced thereby. It is not therefore such an error as to entitle the appellant to a reversal of the case. Desberger v. Harrington, 28 Mo. App. 632; Frick v. Railroad, 75 Mo. 599-610; R. S. 1899, sec. 865; Ross v. Kansas City, 48 Mo. App. 440-449; Nelson Mfg. Co. v. Mitchell, 38 Mo. App. 321; Matney v. Railroad, 30 Mo. App. 507. (4) Judgment will not be reversed on account of technical inaccuracy of an instruction

when it had no tendency to injure the party. Brooking v. Shinn, 25 Mo. App. 277; Lambert v. Hartshorne, 65 Mo. 549; Blewett v. Railroad, 72 Mo. 583; Wade v. Railroad, 78 Mo. 362; Morris v. Railroad, 79 Mo. 370; Bridges v. Railroad, 6 Mo. App. 395; Kuhn v. Ins. Co., 71 Mo. App. 305; Town of Hurdland v. Hardy, 74 Mo. App. 614; Sinclair v. Bradley, 52 Mo. 180; Baustain v. Young, 152 Mo. 317; Fields v. Railroad, 80 Mo. App. 603; State v. Nell, 79 Mo. App. 243; Barkley v. Barkley Cemetery Association, 153 Mo. 300; Hall v. Goodnight, 138 Mo. 576; State ex rel. v. Branch, 151 Mo. 622.   (5)   If defendant desired to restrict plaintiff's right to damages that she was entitled to recover, to more limited bounds than were done by the instructions, it should have asked an instruction to that effect.   Robertson v. Railroad, 152 Mo. 393; Browning v. Railroad, 124 Mo. 71, 72; Matthews v. Railroad, 142 Mo. 665-6; Harmon v. Donohoe, 153 Mo. 271-5; Berkson v. Railroad, 144 Mo. 211.   (6)   The prime object of instructions is not to test the accuracy of the trial judge in passing upon them, but to afford the average layman of the jury a clear and plain view of the legal principles applicable to the case by which he may be guided to a just result.   Blanton v. Dold, 109 Mo. 64.

BROADDUS, J.—The plaintiff sued the defendant, a municipal corporation of the State, for an injury alleged to have been received by her, by reason of the defective condition of its sidewalk.   The injury is alleged to have occurred on the seventh day of November, 1898, while the plaintiff was passing over said sidewalk, with due care and caution on her part, when she was thrown down and injured in her right hand and arm.   The jury returned a verdict for the plaintiff for the sum of $1,933.   The defendant appealed.

The case was here once before and is reported in 85 Mo. App. 180, at which time it was affirmed, on the action of the lower court granting the defendant a new trial, on the ground

that the verdict of the jury was excessive, the amount rendered being $1,800.

One of the grounds relied on for a reversal was the action of Mr. Dryden, one of plaintiff's counsel, who in his opening statement to the jury said in substance that there had been a verdict for the plaintiff for $1,800 on a former trial of the case. Mr. Paxton, defendant's counsel, objected to the remark of plaintiff's counsel, and moved the court to instruct the jury, that it was exceedingly improper. Mr. Dryden then said: "I made the statement simply to explain why the case was being tried at this late day." Mr. Paxton then said: "I ask the court to instruct the jury against the consideration of that remark." The court then said: "The jury won't regard anything that has been said about the verdict in the case on the former trial." Mr. Dryden then said: "Well, I withdraw the remark, too, your Honor." Mr. Paxton: "I ask the court to instruct the jury not to consider that remark, and that it is improper." The court then said: "The jury have been so instructed."

In view of what was said by the court to the jury, not to regard the language used by the attorney, and that they were so instructed, we do not think defendant could have been prejudiced, especially as the attorney disclaimed any intentional wrong and that he withdrew what he had said. The court in such cases always looks to the circumstances and the character of remarks made, and if it appears that there are reasonable grounds to believe that the jury were influenced thereby in arriving at their verdict, the verdict is set aside; otherwise the matter is treated as harmless.

Instruction No. 5 given at the instance of plaintiff is objected to as erroneous and as particularly harmful. It is as follows: "The court instructs the jury, that if you find for the plaintiff, in assessing her damages you will take into consideration the physical injury inflicted, the bodily pain and mental anguish endured, and any that *may* result in the future

from said injury, if any, which you believe the evidence proves she has sustained, not to exceed in all the sum of two thousand five hundred dollars." This instruction is somewhat faulty and inaccurate of expression. It would have been proper to have used the word, *will* instead of the italicised word *may,* but in our opinion the error was practically cured by the words following, viz., *"which you believe the evidence proves she has sustained."* It is true it is ungrammatical and the words *will sustain* should have been used instead of *has sustained.* But it is not to be held bad merely on that account, if it is substantially good law. It is not likely that the ordinary juror would be misled thereby.

While we are not assuming anything as to the ignorance of jurors, it is permissible to presume that outside of the learned in language, the average man of ordinary intelligence and education is just as liable to use the word *may* as *will* without it ever occurring to him that their meaning is different. We do not want, however, to be understood as justifying such loose expressions as we find in said instruction, for there might be instances in which such a course would lead to a wrong conclusion. It is the experience of trial judges and the legal profession, that jurors as a rule look more to the general meaning of an instruction than to its analysis in detail. It is the spirit and substance that they grasp and apply to the facts.

But it is contended that the amount of the verdict, considering the extent of the injury, indicates that the jury were misled into giving plaintiff damages on the possibilities of suffering and injury in the future. As to the severity and extent of plaintiff's injury, besides herself, four doctors gave their evidence in the case.

Dr. J. P. Henry, a physician of long experience, was agreed upon to make an examination of the plaintiff's injured arm, and his evidence was to the effect that he had made a close examination and found that she had a stiff wrist, which, to a certain extent, she could neither flex nor extend, and

couldn't rotate it well, but found no dislocation. He found the fingers contracted, but could not say whether the injury was a fracture, or what it was. His opinion was that she had sustained a ligamentous injury which would produce more pain than a broken bone; and that the injury itself was permanent. He was asked by the court what he meant by saying the injury was permanent. His answer was: "I mean that it will be continuous. She may suffer with it the balance of her days, and may in the course of time, probably by action and use of the arm and wrist, regain better use of it than at present. But I am thoroughly satisfied in my mind, that there is a contraction of the tendons of the fingers and it is impossible for her to rotate that hand, as I rotate this, or flex or extend that hand as I am extending mine." And finally he said: "How long it will last, I can't say."

Dr. G. T. Twyman, who attended plaintiff when she was injured, was called for the defendant. After testifying that the injury was a severe sprain, he was asked the following questions: "Q. Doctor, is that likely always to be stiff? A. No doubt, unless it is limbered up by passive motion. Q. Do you think it could be overcome with that? A. I think it could." The evidence of Dr. Meador, called by the plaintiff, is much to the same effect as that of Doctor Twyman.

The plaintiff herself testified as follows: "I have tried to use my hand in cooking and all kinds of housework. I have broken many a dish trying to use that hand. I haven't strength in that hand at all." Her age is not stated, but we can infer that she must be past middle life, as she said her eldest child was twenty-eight years of age.

The sum and substance of all the evidence on both sides is that she was severely injured. And the jury would have been justified in believing that the injury was permanent, although two of the physicians are of the opinion that the arm may be restored by means of a certain treatment which they call a "passive motion," which we infer is not motion made by

the patient herself, but motion exerted upon the patient by some other agency. But all agree that the injury was severe, that she suffered much, and it is the opinion of Dr. Henry that her injury will continue during the "balance of her days": and her own evidence that she has no strength in the injured hand must be considered. It is true that, as Dr. Henry well said, people are inclined to magnify their injuries and sometimes feign them, but all the doctors concur that the plaintiff was in fact severely injured, and such being the fact her evidence must be duly weighed with that of the other witnesses, and as such must have some force.

With all these facts before us, we are not prepared to say that there was not sufficient testimony before the jury warranting them to bring in the verdict for the amount stated, without resorting to the possibilities of permanent injury and suffering, but it may well stand upon what would be a most reasonable conclusion therefrom. And we are not prepared to say that the verdict is excessive. It is difficult to measure in dollars the value of the free use of the human limb, either in the young or the aged, and harder still to place a money value for pain inflicted by the wrongdoer. We have no rule by which they are to be estimated. All the courts can do is to see that the damages awarded in such case are not unreasonable and oppressive.

When this case was first tried the verdict was for $1,800, which the court set aside on the ground that it was excessive, and this court deferring to the opinion of the trial court affirmed its action. Another jury returns a still larger verdict, which the trial court upholds. In the case of Porter v. Railroad, 71 Mo. 66, there had been three trials. On the first the verdict was $10,000; in the second, $12,000, and on the third, $10,000. The court said that under the circumstances it could not with propriety say that the damages were excessive, and affirmed the judgment. There have been two verdicts in this case, the second greater than the first. We feel as did the

judges of the Supreme Court in the Porter case, that it would be improper to set the last verdict aside, in view of the fact that two juries have found that she was severely, and we are bound to presume, permanently injured, judging by their finding.

When the case was here before we did not find that the former verdict was excessive, but it was the opinion of the court that the granting a new trial for the cause assigned, was largely in the discretion of the trial court; that "its prerogative in that respect is much broader than that of the appellate court, since it has much better means of correctly passing on the weight of evidence," and that "its discretion will not be interfered with, unless it clearly appears to have been exercised in a manner purely arbitrary." Notwithstanding the former verdict was somewhat smaller than the present one, the trial court holds that it is not excessive, deferring, perhaps, as we have done, to the opinion of two juries to practically the same effect.

The cause is affirmed. All concur.